EPHRAIM G. PONDER, plaintiff in error, vs. CARY S. COX, defendant in error.

[1.] A defendant, who has allowed a judgment to go against him in a Court of Law, even under a misapprehension of his right to defend in that Court, cannot obtain relief against the judgment by injunction, if he has a remedy in a Court of Law, by a cross action, unless, he shows that the plaintiff in the judgment is insolvent, or is out of the jurisdiction of the Court, so as to show that his remedy is inadequate.

[2.] The statute of limitations does not bar the suit of a negro for his freedom.

[3.] A negro brought into this State, in a state of temporary slavery, commits no offence under the Act of the General Assembly, which makes it unlawful for free persons of color to come from other States to this.

In Equity, in Thomas Superior Court.    Decision by Judge ALEXANDER, at June Term, 1858.

This was a bill filed by Cary S. Cox, against Ephraim G. Ponder, to enjoin the enforcement of a judgment at law, recovered by William G. Ponder, against complainant, and afterwards transferred to defendant.

The bill alleges, that in January, 1856, the complainant Cox, by his agent Thomas Dyson purchased of the defendant Ephraim G. Ponder, a negro man slave, a valuable blacksmith, named Price, or Giles Price, for the sum of eighteen

hundred dollars: That the bill of sale was made to Dyson without noticing his agency, and that Dyson gave his own notes to defendant. One for $500, payable one day after date. The other for $1,300, payable January 1857; that defendant in said bill of sale warranted the soundness and title of the negro; that shortly afterwards Dyson reported to complainant that he had effected the purchase, and complainant executed and delivered to Dyson, notes corresponding in date and amounts, &c., to the notes he Dyson had given to defendant, and took from him a transfer of the bill of sale, and possession of the negro. In about twelve months thereafter, complainant received information that said negro, Price, was not a slave, but was a free person of color; that upon investigation, it appeared that said Price was born in the State of Maryland, a free person, and that some eighteen years before, for some crime of which he had been convicted in that State, he had been sentenced to be sold as a slave for the term of fifteen years; that he was bought by the defendant, who was about that time engaged in buying and selling negroes, and by him brought to Georgia, where he was sold, and after changing hands several times, had again fallen into the possession of defendant, who sold him as above stated to complainant.

The bill further alleges, that complainant had paid the $500 note. That understanding that the $1,300 note given by Dyson to defendant, had been transferred before its maturity to William G. Ponder, a brother of defendant, and that he threatens to sue them, and not wishing to see Dyson who had acted only as his agent in the business, sued; complainant applied to William G. Ponder, and substituted his note for Dyson's and that William G. Ponder had brought suit, against complainant upon this note and obtained judgment thereon; that believing, that under the circumstances, he could not make a valid defence at law against the suit thus brought he suffered said judgment to go against him. But immediately thereafter, William G. Ponder as-

signed and transferred said judgment to defendant, and complainant feels warranted in believing, and so charges that said pretended transfer of the note in the first instance to William G. Ponder, was collusive and fraudulent, and was a mere trick and arrangement, to deprive complainant of his defence at law.

The bill further alleges, that said negro, Price, by his next friend, has instituted proceedings to assert and recover his freedom, which are now pending in the Superior Court of said county; that defendant is proceeding to enforce the collection of said judgment, and has levied upon and advertised for sale the property of complainant, and which will be sold unless restrained by the order and decree of this Court.

The bill prays that said judgment *fi. fa.* be enjoined, until the trial and termination of the suit pending for the recovery of the freedom of the negro Price, &c.

To this bill defendant demurred for want of equity.

Besides demurring, defendant also filed his answer, in which he stated that he sold said negro, Price, to Thomas Dyson, on the 3d of January, 1856, and executed to him a bill of sale for the same; that Dyson in consideration of said purchase, gave to him his two notes, one for $500 payable to defendant, one day after date; the other for $1,300, payable to William G. Ponder, executor of James M. Vickers, deceased, due January thereafter; that at the time of said purchase, it was expressly understood by Dyson, that the $1,300 note was to be turned over to said William G. Ponder, executor, in lieu and satisfaction of a debt, which defendant owed said Ponder, as executor aforesaid. That Dyson did not disclose to defendant that he was buying said negro for complainant, or that he was acting as his agent in the purchase, nor did defendant know at that time, and never heard until long afterwards, that Dyson acted as his agent in said purchase, and has no knowledge now of such agency, except from what he has heard since the sale. Defendant further answers, that the $500 note was taken up by Dyson, and that

Ponder vs. Cox.

complainant gave to William G. Ponder, his note for $1,300, not in lieu and satisfaction of Dyson's note, but as collateral security thereto, and upon this note thus given as collateral, suit was brought and judgment recovered by William G. Ponder against complainant, without any defence being filed thereto. Defendant admits, that after the recovery of the judgment, he settled or arranged the debt due by him to the estate of Vickers and William G. Ponder, executor, assigned and transferred to him said judgment against complainant, and he denies that there was any collusion between him and said William G. Ponder, in this arrangement, or that the same was done with any view to injure or defraud complainant, but the same was fair and *bona fide*.

Defendant admits the purchase, by his partner or agent of said boy Price, in the year 1838, in Maryland; that he was brought to Georgia and sold, and after passing through several hands, had again fallen into his (defendant's) hands; but he denies that he ever had any knowledge or notice, that said boy Price was not a slave for life; and avers that he now believes that he is a slave, and that complainant's title is good and valid. He admits that proceedings have been instituted to establish the freedom of said negro, and that the same are now pending, but he thinks and believes his claim to his freedom is unfounded; and he further alleges and charges that said proceedings have been instituted at the instance and by the procurement and connivance of the complainant.

The defendant further pleads, that said claim to freedom, is barred by the statute of limitations, more than four years having elapsed since the expiration of said alleged fifteen years of slavery into which said negro was sold.

Upon the hearing, the Court overruled the demurrer, and refused to dissolve the injunction, upon the answer, whereupon the defendant excepts.

McIntyre & Young, represented by Iverson L. Harris, for plaintiff in error.

Alexander and Burch, *contra.*

*By the Court.*—McDonald, J. delivering the opinion.

[1] The complainant's bill does not present a case which would justify a Court of Chancery to interpose in his behalf, by way of injunction.   He has the warranty of title from the plaintiff in error, and there is nothing in the bill to show that his remedy at law on that is not adequate and ample. He claims however, that under the facts alleged by him, it is against conscience for the plaintiff in error to enforce the collection of the execution.   That is not a sufficient ground of itself, for chancery to interfere with the proceedings in a Court of Law.   There must be other equitable circumstances, to sustain it.   It is manifest that if a defendant in a Court of Law, have the means of a perfect defence in that Court, and by his neglect alone, he fails to make it, however unjust the demand may be on which the plaintiff has recovered judgment, and however against conscience and morals it may be for him to compel its payment, a Court of Equity will not interpose, for his relief.   In this case the defendant in error was sued and judgment was recovered against him, he set up no defence, although he was informed of the insecurity of the title to the negro, about the time the note given for him became due.   He allowed the suit to proceed to judgment against him, and did not even institute a cross action for damages, although there was no legal impediment to a suit.   From the statements of his bill, Dyson was his agent, and what was to hinder him from suing ?   He was not obliged to await a suit by the negro for his freedom.   If the title was not good at the time of the sale, there was a breach of warranty.   But the complainant excuses himself for not de-

fending in the Court of Law by alleging that he had supposed that the note had been transferred to the plaintiff in that Court, fairly and *bona fide*, before due, for a valuable consideration. He predicates his right to appeal, now, to a Court of Chancery, on the fact that the execution, shortly after it was issued, was transferred to the original payee of the note. The charge is made argumentatively. He " feels warranted in believing &c., and therefore charges." &c. This charge is far from being positive, and injunctions ought never to be granted, except the complainant is willing to make a strong case of irreparable injury, or of threatened or impending wrong, where the legal remedy is inadequate. Mr. Justice Baldwin properly remarked in a case before him in the Circuit Court of the United States, that "there is no power, the exercise of which, is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous, in a doubtful case, than the issuing of an injunction; it is the strong arm of equity that never ought to be extended unless to cases of great injury, where Courts of Law cannot afford an adequate and commensurate remedy in damages. The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction; but that will not be awarded in doubtful cases, or new ones not coming within well established principles; for if it issues erroneously an irreparable injury is inflicted, for which there can be no redress, it being the act of a Court, not of the party, who prays it." *Bonaparte vs. Cam. & Am. R. R. Co., Baldwin's Rep.* 217.

It has been decided in Kentucky, that a Court of chancery will not grant an injunction to stay a judgment, where the complainant affirms the contract, and seeks to liquidate the damages upon a warranty, or for fraud upon the sale. *Robinson vs. Gilbreth*, 4 *Bibb*, 184. I recognize that as correct in principle, and it has some application to this case. The complainant in this case, if he has not expressly affirmed, has not disaffirmed the contract, and appears to have been

somewhat instrumental in bringing about the state of things, which places it out of his power now to disaffirm it. I am not prepared, however, to say, that what he has done, shall prejudice his claims to relief now, if his case were, in other respects such as to entitle him to it; for what he did, seems to have been suggested by that prudence which any vigilant man would observe to guard against future injury or loss. But the complainant does not show a single circumstance which entitles him, under the facts apparent on the face of his bill, to apply to a Court of Equity for relief. There is no allegation that the warrantor from whom his agent purchased the negro, is not able to respond. His insolvency or removal from the State, could alone justify the Court now to interfere by enjoining the judgment, until the question of title could be litigated between the complainant and defendant.

[2.] The bill charges that the negro for whom the note was given was not a slave, but that he was a free person, residing in the State of Maryland, and was prosecuted there for some offence of which he was convicted, and sold as a slave for the term of fifteen years, under the laws of that State; and that the defendant to the bill insists that the fifteen years, the term for which he was sold into slavery, expired more than five years ago, and that the statute of limitations has effectually barred his rights. The plaintiff in error insists on the statute as a bar. There is no statute bar to suits for freedom. There is no limitation to suits except by statute. There must be positive law to bar a right. It is true, that "length of time" raises a presumption against old and stale demands, but that presumption is not regarded when the party against whom it is to operate is " *non sui juris*," as a married woman or an infant. From the state and condition of a negro entitled to freedom, but held in slavery, no presumption can be raised against him. He is in perpetual duress during the time he is so held; and there can be no *legal* acquiescence on his part. Acquiescence implies knowledge and an agent capable of exercising a will,

independent of others.    This cannot be assumed in a case of a negro held in slavery.

The complainant alleges further, that the defendant (plaintiff in error,) insists that as laws of this State forbid domestic emancipation, no Court will release the negro from slavery.

The counsel for the plaintiff in error, argues before this Court, in addition, that the negro, is here in a state of slavery, and that he is here in violation of the Act of 1818, which declares that no free person of color shall come into this State, and that persons offending against the act, shall be subject to penalties in the act prescribed.    A person who is not a voluntary agent cannot commit the kind of crime, which involves an act.    There must in every such case, be " a joint operation of act and intention."    A negro brought to this State as a slave, cannot be presumed to have any intention to violate our law, or freedom of action, in coming here, though he, in fact, be entitled to his freedom.    There is no law against the introduction of free persons of color, subject to temporary slavery, into this State, by the persons having a right to their services as slaves, for a term of years.    If such persons are brought here by their temporary owners, they remain here in violation of no law, and are subject to no penalty.    They certainly do not remain in a state of slavery, after the expiration of their term of service, and the plaintiff in error cannot be sustained in the position, that his having brought the negro here, enlarged his title from an interest in him for a term of years, to an absolute estate in his person, during his life.

There is nothing in the case to support the argument, that this State will not give countenance to a policy of the State of Maryland to throw off her free colored population on States whose policy prohibits their reception there.    There is nothing in the record which warrants the assumption, that the negro who was the consideration of the note sued on,

was taken from Maryland or brought here, in furtherance of any such policy on the part of that State.

We think that the Court below erred in overruling the demurrer to the complainant's bill, and therefore order that the said demurrer be sustained, and the bill be dismissed, unless the complainant can so amend the bill as to show that his remedy at law against the defendant is inadequate by reason of. his insolvency; or, of his having removed out of the jurisdiction, which proposition to amend must be supported by affidavit of the truth of the facts proposed to be introduced by way of amendment.

Judgment reversed.